# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DENISE SIMON-LEVEQUE,

      Plaintiff,

      v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

No. 15 C 10049

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise Simon-Leveque filed this action seeking reversal of the final de-cision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a request to reverse the ALJ's decision and remand for additional proceedings. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp.

2d 973, 977 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB on August 5, 2013, alleging that she became disabled on November 2, 2011, because of diabetes, heart disease, obesity, neuropathy, heart attack, carpal tunnel syndrome, and depression. (R. at 14, 216–22, 240, 251). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 14, 83–107, 122–23). On June 8, 2015, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 14, 30–82). The ALJ also heard testimony from Amanda Ortman, a vocational expert (VE). (*Id.* at 14, 76–81).

The ALJ denied Plaintiff's request for benefits on June 25, 2015. (R. at 14–25). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since November 2, 2011, the alleged onset date. (*Id.* at 16). At step two, the ALJ found that Plaintiff's diabetes mellitus, ischemic heart disease, obesity, peripheral neuropathy, carpal tunnel syndrome, and degenerative disc disease are severe impairments. (*Id.*). The ALJ also found that Plaintiff's depression is a nonsevere impairment. (*Id.* at 16–18). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 18).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that she can perform sedentary work, except

> she cannot kneel, crawl, or climb ladders, ropes or scaffolds. She can occasionally crouch, stoop, balance, and climb ramps and stairs. She can perform frequent handling, fingering, and feeling, bilaterally. She should avoid concentrated exposure to vibration, pulmonary irritants (fumes, odors, dusts, and gases), and poorly ventilated areas. Her work must be performed with less than frequent need to discriminate small objects at a distance.

(R. at 18). At step four, based on Plaintiff's RFC, age, education, and the VE's testimony, the ALJ determined that she can perform her past relevant work as a brokerage clerk. (*Id.* at 24–25). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability, as defined by the Act. (*Id.* at 25).

The Appeals Council denied Plaintiff's request for review on April 21, 2014. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks eviden-

tiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. RELEVANT MEDICAL EVIDENCE

Plaintiff was a brokerage assistant at Morgan Stanley from 1983 until March 2012, when she was laid off upon returning from a medical leave of absence. (R. at 39).

On March 15, 2013, Catherine J. Yi, M.D., noted that Plaintiff needs close follow-up and monitoring because she is "very noncompliant" with medications and doctor visits. (R. at 520). On March 17, Plaintiff reported ongoing sleep issues, with resulting depression and fatigue. (*Id.* at 452). Dr. Yi prescribed Cymbalta.[3] (*Id.*). On March 21, Plaintiff reported not starting her Cymbalta. (*Id.*). Dr. Yi found that Plaintiff has difficulty motivating herself due to her depression. (*Id.*). On May 3, Plaintiff still had not started her antidepressant and had not followed-up on the psych referral. (*Id.* at 520). Dr. Yi concluded that Plaintiff's depression has contributed to her noncompliance with her medication regimen and her failure to follow-up on her medical conditions. (*Id.*). On July 26, Dr. Yi again prescribed Cymbalta, with the possibility of increasing dosage if needed. (*Id.* at 764). On August 30, Plaintiff presented with signs of depression. (*Id.*). She acknowledged not having started her Cymbalta prescription. (*Id.*). On October 23 and November 19, Plaintiff reported that she had started Cymbalta without side effects and that her symptoms had im-

---

[3] Cymbalta (duloxetine) is used to treat major depressive disorder and is helpful in alleviating neuropathic pain. <www.drugs.com> (last visited December 20, 2016).

proved. (*Id.*). However, on January 3, 2014, Plaintiff reported depression symptoms despite taking Cymbalta. (*Id.* at 764). Plaintiff later reported that she used Cymbalta only intermittently because it made her feel tired and "foggy." (*Id.* at 1067).

On December 20, 2013, Jeffrey Karr, Ph.D., a licensed clinical psychologist, performed a consultative examination on behalf of the Agency. (R. at 628–31). Plaintiff reported insomnia, persistent headaches, vision impairment, difficulty with mobility and prolonged standing, shortness of breath, problems with balance and gripping, and hand and leg pain. (*Id.* at 628). She also reported ongoing depression, along with irritability, withdrawal, and sadness. (*Id.* at 629). On examination, Dr. Karr noted that Plaintiff was briefly tearful, but otherwise was alert without obvious cognitive difficulties. (*Id.*). Dr. Karr concluded that Plaintiff exhibited some depressive symptoms in connection with the loss of her mother and issues with her employer's alleged health constrictions [*sic*], but otherwise did not exhibit behavior oddities, with much of her focus on somatic concerns. (*Id.* at 631). Dr. Karr diagnosed depressive disorder not otherwise specified. (*Id.* at 630).

On January 18, 2014, Charles Carlton, M.D., performed an internal medicine consultative examination on behalf of the Agency. (R. at 774–82). Plaintiff reported a treatment history for diabetes, hypertension, high cholesterol, asthma, coronary artery disease, carpal tunnel syndrome, depression, and diabetic peripheral neuropathy involving her hands and feet. (*Id.* at 775). On examination, Dr. Carlton found that Plaintiff has some difficulty moving due to the effects of morbid obesity, difficulty with toe walking and tandem walking, and has knee pain while walking and

during special maneuvers, but she can walk 50 feet without the use of an assistive device. (*Id.* at 777). Plaintiff has full, painless range of motion in all joints except the hips and knees, decreased range of motion in the lumbar spine, normal grip strength in her right hand, 4/5 motor strength in her left hand, and her fine and gross skills were mildly impaired in the left hand but unimpaired in the right hand. (*Id.*). Plaintiff has altered sensation to touch in her hands, especially in her finger-tips, and altered sensation to touch in her legs and feet. (*Id.* at 778). Dr. Carlton opined that Plaintiff can safely sit and stand, walk greater than 50 feet without and assistive device, handle objects with both hands, and lift 10–20 pounds. (*Id.* at 779). He cautioned, however, that this evaluation is "a conservative estimate . . . based on at time limited history, physical examination and review of the medical records available at the time." (*Id.*).

On January 27, 2014, Bharati Jhaveri, M.D., a state agency consultant, re-viewed the medical record, and made a physical disability determination. (R. at 83–93). She opined that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, and can stand or walk two hours and sit six hours in a workday with nor-mal breaks. (*Id.* at 89). Plaintiff also has some postural, manipulative, environmen-tal, and vision limitations. (*Id.* at 90–91). On September 9, 2014, Vidya Madala, M.D., another state agency consultant, affirmed Dr. Jhaveri's assessment. (*Id.* at 95–106).

On October 28, 2014, Allen Anderson, M.D., completed a physical RFC question-naire. (R. at 891–93). He opined that Plaintiff can walk less than one block due to

her dyspnea on exertion (shortness of breath), can sit more than two hours before needing to get up, and can stand for ten minutes before needing to sit down. (*Id.* at 891). Dr. Anderson concluded that because of her shortness of breath, Plaintiff would need to take unscheduled, ten-minute breaks every two hours. (*Id.* at 892). Plaintiff will need to elevate her legs to heart level as much as possible during the workday. (*Id.*). Dr. Anderson opined that Plaintiff can occasionally lift ten pounds and has no significant limitations with reaching, handling or fingering. (*Id.*). He concluded that Plaintiff would miss one day per month due to her impairments. (*Id.* at 893).

On the same day, Thomas A. Wiedrich, M.D., also completed a physical RFC assessment. (R. at 894–96). He concluded that Plaintiff has no physical restrictions. (*Id.* at 896).

On December 19, 2014, after treating Plaintiff every two months for 14 years, Dr. Li completed a physical RFC assessment. (R. at 904–06). She opined that Plaintiff's pain would constantly interfere with the attention and concentration needed to perform even simple work tasks. (*Id.* at 904). Plaintiff's depression affects her many physical maladies. (*Id.*). Plaintiff can walk only ½ block without rest, can sit between 30 minutes to an hour before needing to get up, cannot stand at all, and can sit/stand/walk less than two hours in a workday. (*Id.* at 904, 906). Plaintiff will need unscheduled breaks, needs a cane to ambulate, can lift and carry less than ten pounds, and has significant limitations with reaching, handling, or fingering. (*Id.* at 906). Dr. Li also noted that Plaintiff's symptoms are worsening. (*Id.* at 905).

On March 20, 2015, Plaintiff began treating with Alexandra Aaronson, M.D. (R. at 1025–31). Plaintiff described symptoms of depressed mood, feelings of hopelessness and worthlessness, loss of energy, changes in sleep habits, concentration difficulties, increased isolation, anhedonia, panic attacks, persistent worries and fears, and anxiety. (*Id.* at 1030). She reported a lack of motivation to complete daily activities and will often go days without taking a shower or engaging in any housework. (*Id.* at 1067). Dr. Aaronson diagnosed major depressive disorder, moderate, and panic disorder without agoraphobia, which are exacerbated by her physical ailments, limited social supports, and unemployment, and assigned a Global Assessment of Functioning (GAF) score of 35.[4] (*Id.* at 1025). Dr. Aaronson later reevaluated her diagnosis to major depressive disorder, first episode severe, with a need to rule out severe with psychotic features, and reduced her GAF score to 30.[5] (*Id.* at 1072). Dr. Aaronson prescribed fluoxetine. (*Id.*). Suena H. Massey, M.D., also observed the initial intake interview, noting that Plaintiff presented with a depressed mood, slow and soft speech, marked psychomotor retardation, dysphoric affect, and

---

[4] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A GAF score of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.

[5] A GAF score of 21–30 indicates that behavior is considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends). *DSM-IV* at 34.

possible auditory hallucinations. (*Id.* at 1072). Dr. Massey diagnosed major depressive disorder, moderate to severe, single episode. (*Id.*).

On April 17, Dr. Aaronson noted that Plaintiff has presented for the past year with low mood, anhedonia, apathy, feelings of guilt, hopelessness, helplessness, passive suicidal ideations, low energy and poor concentration, all consistent with a depressive episode and possible depression with psychosis. (R. at 1079). Dr. Aaronson concluded that numerous psychosocial factors—unemployment, worsening health, and the loss of her mother—exacerbate Plaintiff's depression. (*Id.*). Plaintiff reported improved symptoms with fluoxetine, and Dr. Aaronson increased the dosage. (*Id.*). On May 22, Plaintiff reported worsening physical symptoms, which have made her more depressed. (*Id.* at 1134). She has frequent crying spells, low mood and low energy, sleeps all the time, and reported passive suicidal ideations. (*Id.*). She acknowledged medicine noncompliance, stating that it gives her a "swimmy" feeling. (*Id.*). On examination, Dr. Aaronson noted poor mood, depressed affect, impaired judgment, and fair insight. (*Id.* at 1135). She diagnosed major depressive disorder, severe, and panic disorder without agoraphobia. (*Id.*).

Plaintiff testified that her ability to work is limited due to back pain. (R. at 40). She can walk for only 5 minutes before needing to rest and can sit for only 15–20 minutes before needing to move around. (*Id.* at 41). She has "excruciating" pain and throbbing in her legs and needs to keep them elevated throughout the day. (*Id.* at 42). Plaintiff's pain medications cause drowsiness and nausea. (*Id.* at 43, 48). She has problems walking and needs a cane to keep herself balanced. (*Id.* at 49). She al-

so testified to pain in her knees, feet, and hands. (*Id.* at 43, 45, 50). She is unable to do any household chores. (R. at 44, 55).

## V. DISCUSSION

Plaintiff argues that the ALJ failed to properly consider (1) Plaintiff's mild limitations in the RFC assessment; (2) the opinions of her treating physicians, and (3) Plaintiff's credibility.

### A. ALJ's RFC Assessment Failed To Account for Plaintiff's Depression

Plaintiff contends that the ALJ failed to properly assess the impact of her nonsevere depression on the ability to perform her skilled past relevant work. (Dkt. 14 at 8–10). Further, the ALJ failed to discuss the degree to which her psychological condition had worsened and what limitations this would cause. (*Id.* at 23–24).

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000; see 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations."); SSR 96-8p, at *2 ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The RFC is based upon medical evidence as well as other evidence, such as testimony by the claimant or his friends and family. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). In assessing a claimant's RFC, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those

that are not severe," and may not dismiss evidence contrary to the ALJ's determination. *Villano*, 556 F.3d at 563; *see* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all relevant evidence in your case record."); SSR 96-8p, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.").

The ALJ found that Plaintiff's depression was nonsevere but nevertheless causes mild limitations in social functioning and in concentration, persistence, or pace. (R. at 16–17). The ALJ, however, did not include any nonexertional limitations in the RFC assessment. (*Id.* at 18). While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013), the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC.

The medical record indicates that Plaintiff's depression causes her some difficulty in maintaining motivation to comply with exercise, diet, and medication management and contributes to her social isolation. (R. at 452, 492, 520, 629, 765, 904, 1025, 1030, 1067, 1072). As early as March 2013, Dr. Yi concluded that Plaintiff's depression was severe enough to prescribe Cymbalta, and later to consider increasing the dosage. (*Id.* at 452, 764). The Commissioner's psychological examiner observed depressive symptoms and diagnosed depressive disorder. (*Id.* at 630–31). And by March 2015, Dr. Aaronson diagnosed major depressive disorder and panic

disorder and assigned a GAF score of 35, which she later reduced to 30. (*Id.* at 1025, 1072). The ALJ fails to explain why this evidence does not require at least some nonexertional limitations to Plaintiff's RFC. *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (the ALJ's failure to account for the claimant's mild limitation in her activities of daily living, mild limitation in social functioning, and mild limitation in concentration, persistence, or pace necessitates a remand); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (ALJ's RFC analysis failed to account for the mild mental limitations found in the claimant's activities of daily living, social functioning, and concentration); *Koswenda v. Astrue*, No. 08 C 4732, 2009 WL 958542, at *5 (N.D. Ill. Apr. 2, 2009) (Plaintiff's "limitations in his ability to maintain concentration, persistence or pace, . . . even though mild, should have been included in questions to the VE").

The ALJ's failure to account for Plaintiff's mild limitations in concentration, persistence, or pace is especially critical here where the VE found that the ALJ's RFC would permit Plaintiff to perform her past skilled position as a brokerage clerk. (R. at 25). The *Dictionary of Occupational Titles* defines a brokerage clerk as follows:

> Records purchase and sale of securities, such as stocks and bonds, for investment firm: Computes federal and state transfer taxes and commissions, using calculator and rate tables. Verifies information, such as owners' names, transaction dates, and distribution instructions, on securities certificates to ensure accuracy and conformance with government regulations. Posts transaction data to accounting ledgers and certificate records. Types data on confirmation form to effect transfer of securities purchased and sold. Receives securities and cash and schedules delivery of customer securities.

*Standowski v. Colvin*, No. 13-5663, 2015 WL 404659, at *17 (D.N.J. Jan. 29, 2015) (citation omitted). It very well could be that even a mild limitation in concentration, persistence, or pace could have an impact on a person's ability to perform this skilled position. *Alesia*, 789 F. Supp. 2d at 933–34 ("Because the ALJ did not include any mental functioning restrictions in his RFC finding, Claimant's mental functioning limitations could not be taken into account in the step-four finding. As a result, the ALJ never considered whether Claimant's mental impairments affected her ability to perform her past relevant work, which was skilled in nature."). But the VE was not asked to evaluate that question. Because the ALJ did not account for all of Plaintiff's limitations in his questioning of the VE, it is unclear whether Plaintiff is indeed capable of performing her past relevant work as a brokerage clerk. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion" that Plaintiff can work. *Steele,* 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott,* 297 F.3d at 595.

For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall pose a hypothetical question that explicitly "account[s] for documented limitations of 'concentration, persistence, or pace.'" *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009).

## B. The ALJ Did Not Properly Evaluate Dr. Anderson's Opinion

In October 2014, Dr. Anderson opined that Plaintiff could sit for more than two hours at a time (and for at least six hours in an eight-hour workday) and stand for

ten minutes at a time. (R. at 891–92). He concluded that Plaintiff would require un-scheduled breaks every two hours because of shortness of breath. (*Id.* at 893). Dr. Anderson also opined that Plaintiff should keep her legs elevated "as much as pos-sible." (*Id.* at 892).

By rule, "in determining whether a claimant is entitled to Social Security disa-bility benefits, special weight is accorded opinions of the claimant's treating physi-cian." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). The opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not in-consistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); *accord Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). A treating physician typically has a better opportunity to judge a claimant's limitations than a nontreating physi-cian. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); *Grindle v. Sullivan*, 774 F. Supp. 1501, 1507–08 (N.D. Ill. 1991). "More weight is given to the opinion of treat-ing physicians because of their greater familiarity with the claimant's conditions and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). There-fore, an ALJ "must offer 'good reasons' for discounting a treating physician's opin-ion," and "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining phy-sician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2); other citation omitted). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given

for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)).

In her decision, the ALJ gave "some weight" to Dr. Anderson's opinion, "as the limitations are somewhat consistent with the overall objective evidence. However, Dr. Anderson only treated [Plaintiff] for her cardiovascular complaints. The residual functional capacity provided takes into account all of [Plaintiff's] impairments and provides limitations accordingly." (R. at 24).

Under the circumstances, the ALJ's decision to give Dr. Anderson's opinion only some weight is legally insufficient and not supported by substantial evidence. If a treating physician's opinion is "based solely on the patient's subjective complaints, the ALJ may discount it." *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."). The ALJ is correct that those portions of Dr. Anderson's opinion related to Plaintiff's lower back pain and related restrictions are based only on Plaintiff's subjective complaints. (*See* R. at 24, 891). However, Dr. Anderson's opinion that Plaintiff needs to elevate her legs is directly related to the condition—heart failure—for which Dr. Anderson treated her. (*Id.* at 891, 892). Dr. Anderson explicitly stated that he based this re-

striction on Plaintiff's lower extremity edema (*id.*), which is a common symptom related to congestive heart failure.[6]

The Commissioner noted that the ALJ cited medical opinions that contradicted Dr. Anderson's conclusion that Plaintiff needs to keep her legs elevated as much as possible. (Dkt. 18 at 10). The Court, however, must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ did not reject Dr. Anderson's opinion because of contradictory evidence. (R. at 24). In any event, the ALJ must explain why he is rejecting the opinion of a cardiovascular specialist in favor of a general practitioner and non-examining physicians. *Campbell*, 627 F.3d at 306 (An ALJ "must offer 'good reasons' for discounting a treating physician's opinion," and "a contradictory opinion of a non-examining physician does not, by itself, suffice.").

On remand, the ALJ shall reevaluate the weight to be given Dr. Anderson's opinion, considering the relevant medical evidence, the consistency of the opinion with

---

[6] *See* < http://www.webmd.com/heart-disease/heart-failure/edema-overview#1> (last visited January 4, 2017) ("When the heart weakens and pumps blood less effectively, fluid can slowly build up, creating leg edema."); <http://www.mayoclinic.org/diseases-conditions/edema/basics/causes/con-20033037> (last visited January 4, 2017) ("When one or both of your heart's lower chambers lose their ability to pump blood effectively—as happens in congestive heart failure—the blood can back up in your legs, ankles and feet, causing edema.").

the record as a whole, the *physician's specialty*, and other factors which support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)–(6), 416.927(c)(3)–(6).[7]

## C. The ALJ's Credibility Determination is Not Patently Wrong

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or

---

[7] Plaintiff also alleges error with the ALJ's decision to give Dr. Li's opinion only "some weight." (Dkt. 14 at 13–16). Dr. Li opined that Plaintiff can sit for less than two hours in an eight-hour workday, stand for *zero* minutes at a time, and *never* lift or carry *any* weight. (R. at 904–06). The ALJ properly determined that "these limitations are somewhat extreme as compared to the objective evidence in the file, for example that [Plaintiff] cannot lift or carry any weight." (*Id.* at 24). The ALJ's decision is supported by substantial evidence—there is no evidence in Dr. Li's treatment notes to support these limitations. Further, the ALJ cited medical evidence demonstrating normal range of motion, normal neurological function, and normal gait. (*Id.* at 19–22) (citing *id.* at 419–21, 432–33, 502, 533, 777–78, 922, 927–28, 1081, 1108, 1110).

mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

Plaintiff testified that her ability to work is limited due to excruciating pain in her back, legs, knees, feet, and hands. (R. at 40, 42, 43, 45, 50). She keeps her legs elevated throughout the day, can walk for only 5 minutes before needing to rest, and can sit for only 15–20 minutes before needing to move around. (*Id.* at 41–42). Her pain medications cause drowsiness and nausea. (*Id.* at 43, 48). She has problems walking and needs a cane to keep herself balanced. (*Id.* at 49).

In his decision, the ALJ found Plaintiff's allegations "not entirely credible":

> [Plaintiff's] allegations are not supported by the objective evidence. At the hearing, [Plaintiff] testified to being very limited by her hands. She testified to problems cooking, driving, and using a computer. She stated that she experienced finger locking since 2014. However, [Plaintiff's] hand doctor, Dr. Weidrich stated in October 2014 that [Plaintiff's] prognosis was good and that she had no restrictions. [Plaintiff] testified to her hands being contracted which she showed at the hearing, however, she testified that this problem did not occur until around January of 2015. Further, [Plaintiff] testified that she regularly checks her blood sugar and watches her diet. Yet, there are numerous instances in the record to noncompliance with diet, medications, and follow up appointments. [Plaintiff] may have complied at times, but not consistently throughout her period of disability. Additionally, as far as [Plaintiff's] back and knee pain, her treatment has been conservative. She testified that she received injections for her knee pain and the rec-

ord shows that she received physical therapy. She also recently started
receiving therapy due to her complaints of back pain.

(R. at 23) (citation omitted).

Plaintiff contends that the ALJ ignored and failed to discuss the medical evidence supporting her ongoing hand impairment. (Dkt. 14 at 16–18). But the ALJ noted that Dr. Weidrich—Plaintiff's own hand doctor—opined in October 2014 that she had no restrictions. (R. at 23) (citing *id.* at 896). The ALJ also noted that Plaintiff received cortisone shots for carpal tunnel syndrome in 2012, and that in 2013, she stated that her wrists felt better. (*Id.* at 20) (citing *id.* at 460). And Dr. Carlton opined in January 2014 that Plaintiff was only mildly impaired in her left hand, unimpaired in her right hand, and could handle objects with both hands. (*Id.* at 21, 23) (citing *id.* at 777, 779–80). Thus, the ALJ properly relied upon the discrepancies between the objective evidence and Plaintiff's testimony. *See Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010) ("Here, the objective medical evidence consistently revealed only mild degenerative change, and the ALJ properly relied upon the discrepancy between the objective evidence and Jones's self-reports."). The ALJ also relied upon the internal inconsistencies in Plaintiff's statements as to when she first started experiencing finger locking. She stated that it began after Dr. Weidrich found she had no finger restrictions, but later acknowledged that it started earlier. (R. at 23) (citing *id.* at 63, 64, 896); *see Michalec v. Colvin*, 629 F. App'x 771, 775 (7th Cir. 2015) ("In light of the inconsistencies between Michalec's statements to his doctors and his testimony at the hearing, Michalec has not shown that the ALJ's credibility assessment is patently erroneous.").

Plaintiff argues that the ALJ "cannot logically use [Dr. Weidrich's] opinion to discount [her] credibility and then reject [Dr. Weidrich's] opinion for not being supported by the record." (Dkt. 14 at 18). But the ALJ did not reject Dr. Weidrich's opinion; instead he assigned it "some weight," finding that due to Plaintiff's complaints, and the results of Dr. Carlton's examination, Plaintiff was limited to frequent handling, fingering, and feeling. (R. at 24). Thus, the ALJ properly relied on Dr. Weidrich's opinion to conclude that Plaintiff's hand impairment was not as severe as she testified.

Next, Plaintiff contends that the ALJ impermissibly relied on her noncompliance with diet, medication, and follow-up appointments to undermine her credibility without determining whether she had good reasons behind this noncompliance. (Dkt. 14 at 18–20). But the ALJ was not relying on her noncompliance to undermine her credibility; rather, he was making a negative inference from her testimony that she was compliant when, in fact, the record reflected frequent noncompliance. (R. at 23); *see Hamilton v. Colvin*, 525 F. App'x 433, 437 (7th Cir. 2013) ("Testimonial inconsistencies can indeed form the basis of an adverse credibility finding . . . .").

Finally, Plaintiff takes issue with the ALJ's conclusion that the record reflected conservative treatment for her back and knee pain. (Dkt. 14 at 20–23). But Plaintiff does not contend that the ALJ's finding was erroneous; instead, she asserts that the ALJ should have considered the effects of her obesity on her back and knee pain. (*Id.*). However, the ALJ explicitly found that "[i]n light of [Plaintiff's] obesity and the combination of her impairments, I have restricted her to a range of sedentary

work." (R. at 23). Further, when evaluating the state agency consultant's opinions, the ALJ noted that the combination of Plaintiff's impairments—including her obesity and knee and back conditions—resulted in a limitation to sedentary work. (*Id.*) (citing *id.* at 89–92, 102–04). The VE testified that Plaintiff's past relevant work as a brokerage clerk is sedentary, both as she performed it and as performed in the national economy. (*Id.* at 24–25, 77).

Under these circumstances, the Court cannot conclude that the ALJ's credibility determination was patently wrong. The ALJ supported his decision with specific findings, supported by substantial evidence. *Moss*, 555 F.3d at 561.

## D. Summary

On remand, after determining the weight to be given Dr. Anderson's opinion, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even limitations that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). Finally, with the assistance of a VE, the ALJ shall determine whether Plaintiff can perform her past relevant work or if there are jobs that exist in significant numbers that Plaintiff can perform.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's request for summary judgment is **GRANTED**, and Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 17, 2017

_____
MARY M. ROWLAND
United States Magistrate Judge